# TABLE OF CONTENTS

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | CIVIL NO. 6:14-cv-595 |
| JOHN PARKS TROWBRIDGE, JR., | § | |
| BRIGHT FUTURE INVESTMENTS, INC., | § | |
| IDEAL ABILITIES, and | § | |
| TYLER COUNTY TAX OFFICE, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT JOHN PARKS TROWBRIDGE, JR.'S ANSWER

AVOIDANCE FOR FRAUD . . . . . . . . . . . . 1

BASIS OF THIS LAWSUIT: NAKED PRESUMPTION OF LIABILITY TO INCOME TAX. . . . 2

JURISDICTIONAL PROVISIONS OF THE CONSTITUTION . . . . . . . . 2

TWO DIFFERENT GOVERNMENTS, TWO DIFFERENT LEGISLATURES . . . . . . . 3

STATES *VERSUS* COLUMBIA AND THE TERRITORIES. . . . . . . . . 4

CONGRESS SET ABOUT TO USURP THE LIBERTY OF THE AMERICAN PEOPLE . . . . 5

FIRST OF TWO LEGISLATIVE STRATAGEMS . . . . . . . . . . 7

ACTUAL LEGISLATIVE FRAUD . . . . . . . . . . . . 8

IGNORANCE OF THE LAW EXCUSES NO ONE. . . . . . . . . 9

CONSTRUCTION AND INTERPRETATION OF STATUTES . . . . . . . . 9

THE SUPREME COURT ON STATUTORY CONSTRUCTION. . . . . . . . 10

JUNE 30, 1864, MEANING OF THE TERM OF ART "STATE" . . . . . . . 10

MEANING OF "STATE" IN THE REVISED STATUTES OF 1873–'74 . . . . . . . 11

MEANING OF "UNITED STATES" IN THE REVENUE ACT OF SEPTEMBER 8, 1916 . . . 12

SOCIAL SECURITY ACT OF AUGUST 14, 1935 . . . . . . . . . 12

"INCLUDES AND INCLUDING" . . . . . . . . . . . 12

POLITICAL / GOVERNMENTAL SENSE *VERSUS* GEOGRAPHICAL . . . . . . 14

NOVEL DEFINITIONS OF "STATE," "UNITED STATES" COMPREHEND ONLY
   THE DISTRICT OF COLUMBIA AND THE TERRITORIES . . . . . . 15

AMERICANS APPEAR TO WAIVE THE CONSTITUTIONAL RIGHT OF LIBERTY
   UPON ACQUIRING THE RIGHT TO RECEIVE SOCIAL SECURITY BENEFITS . . . . 15

MODERN SOCIAL SECURITY TERMS "STATE," "UNITED STATES" . . . . . 16

MEANING OF THE TITLE 26 U.S.C. TERMS OF ART "UNITED STATES," "STATE" . . . 17

"THE STATES" OF THE UNITED STATES CODE . . . . . . . 18

FROM RATIONALITY TO POLITICAL / GEOGRAPHICAL ABSURDITY . . . . . 19

TWO TYPES OF LOWER INFERIOR COURT . . . . . . . 21

SECOND CONGRESSIONAL LEGISLATIVE STRATAGEM: CONGRESS GIVE
   CONSTITUTIONAL AND TERRITORIAL COURTS THE SAME NAME . . . . . 23

LOWER INFERIOR COURTS AND FEDERAL DEBT COLLECTION . . . . . 24

TITLE 28 U.S.C. CHAPTER 176 TERMS OF ART "COURT" AND "UNITED STATES" . . . 25

DEFENDANT'S RESIDENCE, DOMICIL, AND LEGAL RESIDENCE . . . . . 26

CONCLUSION . . . . . . . . . . . 28

VERIFICATION . . . . . . . . . . 30

PRAYER OF JUDGMENT . . . . . . . . . 30

ATTACHMENT:  Affidavit in Support of Defendant John Parks Trowbridge's Answer

ATTACHMENT:  CERTIFICATE OF SERVICE

ATTACHMENT:  PROPOSED ORDER

# TABLE OF AUTHORITIES

## CONSTITUTION

Article 1 § 8(1)   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   3

## STATUTES

Act of April 30, 1900, Pub. L. 56–331, Ch. 339, 31 Stat 141 .   .   .   .   .   .   . 14

Act of July 16, 1790, 1 Stat. 130 .   .   .   .   .   .   .   .   .   .   . 14

Act of July 20, 1868, ch. 186, 107; 15 Stat. at L. 167,
    U. S. Comp. Stat. 1901, p. 2277 .   .   .   .   .   .   .   .   . 14

Act of June 28, 1935, 49 Stat. 430, ch. 332, sec. 1
    (Title 1, Section 102, District of Columbia Code (1940) .   .   .   .   .   .   .   . 4

An Act to provide a Government for the District of Columbia," ch. 62,
    16 Stat. 419, February 21, 1871; later legislated in "An Act Providing
    a Permanent Form of Government for the District of Columbia," ch.
    180, sec. 1, 20 Stat. 102, June 11, 1878, to remain and continue as a
    municipal corporation (brought forward from the Act of 1871, as
    provided in the Act of March 2, 1877, amended and approved March
    9, 1878, *Revised Statutes of the United States Relating to the District
    of Columbia . . . 1873–'74* (in force as of December 1, 1873), sec. 2, p.
    2); as amended by the Act of June 28, 1935, 49 Stat. 430, ch. 332, sec.
    1 (Title 1, Section 102, District of Columbia Code (1940)) .   .   . 4, 14, 22, 26, 29

An Act to provide Internal Revenue to support the Government, to pay Interest
    on the Public Debt, and for other Purposes," Ch. 173, 13 Stat. 223, 306,
    June 30, 1864, SEC. 182 .   .   .   .   .   .   .   .   .   .   . 6, 7, 11, 20

Pub.L. 64-368, 39 Stat. 951 .   .   .   .   .   .   .   .   .   .   . 14

Social Security Act of August 14, 1935, SECTION 1101(a)(1) and (2), (b) . 12, 13, 17, 18

Social Security Act of August 14, 1935. TITLE VIII.
    INCOME TAX ON EMPLOYEES. SECTION 801 .   .   .   .   .   .   . 16

Social Security Act of August 14, 1935. TITLE XI. SECTION 1101(a)(6) .   .   . 16

TITLE I.—INCOME TAX. SEC. 15. An Act To increase the revenue,
    and for other purposes," Ch. 463, 39 Stat. 756, 773, September 8, 1916 .   .   . 6, 12

Title 4 U.S.C. Chapter 4 *The States* § 106(a) . . . . . . . . . 19, 20

Title 4 U.S.C. Chapter 4 *The States* § 110(d) . . . . . . . . . 20

5 U.S.C. *Government Organization and Employees* § 552a(a)(2) . . . . . 2

Title 5 U.S.C. - GOVERNMENT ORGANIZATION AND EMPLOYEES.
    § 552a(2) and (13) . . . . . . . . . . 15

Title 8 U.S.C. § 1406 . . . . . . . . . . 14

26 U.S.C. §§ 7201–7241 . . . . . . . . . 3

26 U.S.C. § 3121(e)(1) . . . . . . . . . 18, 19

26 U.S.C. § 6109(d) . . . . . . . . . 17

26 U.S.C. § 7701(a)(9) and (10), (c) . . . . . . . . 17, 18, 19

28 U.S.C. § 528 . . . . . . . . . 30

Title 28 U.S.C. § 132(a) . . . . . . . . . 23

TITLE 28—JUDICIARY AND JUDICIAL PROCEDURE.
    CHAPTER 176—FEDERAL DEBT COLLECTION PROCEDURE
    § 3001(a), (b), and (c) . . . . . . . . . 24

TITLE 28—JUDICIARY AND JUDICIAL PROCEDURE.
    CHAPTER 176—FEDERAL DEBT COLLECTION PROCEDURE
    § 3002(1)(A), (2), (3)(B), (8), (15) . . . . . 24–25, 26, 28, 29

TITLE 28—JUDICIARY AND JUDICIAL PROCEDURE.
    CHAPTER 21—GENERAL PROVISIONS APPLICABLE TO
    COURTS AND JUDGES. § 451 . . . . . . . 22–23, 27

TITLE XXXV. INTERNAL REVENUE. Sec. 3140. *Revised Statutes*
*of the United States, Passed at the First Session of the Forty-third*
*Congress, 1873–'74*, p. 601, approved retroactively as of the Act of
March 2, 1877, amended and approved as of the Act of March 9, 1878 . 6, 11, 21

Title 42 U.S.C. Chapter 7 *Social Security* § 1301(a)(1) and (2), (b) . . . . 16–17, 19

U.C.C. § 9-307(h) . . . . . . . . . 29

iv

# REGULATIONS

26 C.F.R. § 1.1-1(a)(1)   .   .   .   .   .   .   .   .   .   .   .   .   2

27 C.F.R. § 72.11   .   .   .   .   .   .   .   .   .   .   .   .   .   13

# CASE CITATIONS

*American Tobacco Company v. John Patterson*, No. 80-1199, 456 U.S. 63,
    102 S.Ct. 1534, 71 L.Ed.2d 748 (1982)   .   .   .   .   .   10

*Balzac v. People of Porto Rico*, 258 U.S. 298, 312 (1922)   .   .   .   21, 22, 23, 24, 26

*Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)   .   .   .   15

*Chisholm v. Georgia*, 2 U.S. 2 Dall. 419, 472 (1793).   .   .   .   .   .   5

*Cohens v. Virginia*, 19 U.S. 264, 434, 6 Wheat. 265, 5 L.Ed. 257 (1821)   .   .   .   .   2

*Haines v. Kerner*, 404 U.S. 519   .   .   .   .   .   .   .   .   .   1

*Hepburn & Dundas v. Ellzey*, 6 U.S. 445, 452, 2 Cranch 445, 2 L.Ed. 332 (1805)   .   .   5

*Jones v. State Board of Education of and for the State of Tennessee*, 397 U.S. 31,
90 S.Ct. 779, 25 L.Ed.2d 27 (1970)   .   .   .   .   .   .   15

*Kitchens v. Steele*, 112 F.Supp. 383, Dist. Court W.D. Missouri (1953).   .   .   .   .   14

*Linardos v. Fortuna*, 157 F.3d 945 (2d Cir. 1998)   .   .   .   .   .   .   27

*Marbury v. Madison*, 5 U. S. 137, 176 (1803).   .   .   .   .   .   .   29

*McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479,
    111 S.Ct. 888, 112 L.Ed.2d 1005 (1991).   .   .   .   .   .   .   9

*Mookini v. United States*, 303 U.S. 201, 205 (1938).   .   .   .   .   .   22, 23

*New Orleans v. Winter*, 1 Wheat. (U. S.) 91, 4 L. Ed. 44 (1816).   .   .   .   .   .   .   5

*Perry v. United States*, 294 U.S. 330, 353 (1935).   .   .   .   .   .   .   8

*Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300,
    78 L.Ed.2d 17 (1983).   .   .   .   .   .   .   .   .   .   14

*Texas v. Florida*, 306 U.S. 398 (1939)   .   .   .   .   .   .   .   .   26–27

# RULES

FEDERAL RULES OF CIVIL PROCEDURE 8(b)(1)(B).   .   .   .   .   .   .   .   .   1

FEDERAL RULES OF CIVIL PROCEDURE 8(c)(1).   .   .   .   .   .   .   .   .   1

# OTHER AUTHORITIES

*A Dictionary of Law*, 7th ed., Jonathan Law and Elizabeth Martin, eds.
   (Oxford University Press: Oxford, 2009), 295   .   .   .   .   .   .   11, 13

*Black's Law Dictionary*, 2nd ed., p. 95.   .   .   .   .   .   .   .   .   16

William Blackstone, *Commentaries on the Laws of England:*
   *Book the First*, A Reprint of the First Edition with Supplement
   (Dawsons of Pall Mall: London, 1966), 45–46   .   .   .   .   .   .   .   8

*Bouvier's Law Dictionary*, Third Revision (Being the Eighth Edition),
   by Francis Rawle (hereinafter "Bouvier's 8th"), p. 2155 .   .   .   .   .   .   5

Bouvier's 8th, p. 921   .   .   .   .   .   .   .   .   .   .   27

Bouvier's 8th, p. 979   .   .   .   .   .   .   .   .   .   .   13

Bouvier's 8th, p. 1488 .   .   .   .   .   .   .   .   .   .   9

Bouvier's 8th, p. 2130 .   .   .   .   .   .   .   .   .   .   7

Bouvier's 8th, p. 2134 .   .   .   .   .   .   .   .   .   .   11

Bouvier's 8th, p. 2166 .   .   .   .   .   .   .   .   .   .   28

Henry Campbell Black, *Handbook on the Construction and Interpretation*
   *of the Laws* (St. Paul, Minn.: West Publishing Co., 1896), § 57, 128 .   .   .   .   10

Larry DeWitt, "The Development of Social Security in America," Social
   Security Bulletin, Vol. 70, No. 3, 2010, U.S. Social Security Administration   .   .   15

IRS.gov, "Persons Employed In a U.S. Possession / Territory - FIT".   .   .   .   19 (n. 15)

*Los Angeles Times*, "Survey: Banking industry's reputation is nearly as bad
   as that of Congress; BofA ranks last," August 29, 2013   .   .   .   .   .   .   .   7

Jacob Scott, "Codified Canons and the Common Law of Interpretation,"
   The Georgetown Law Journal, Vol. 98, Issue 2, January 2010,
   352–353, 357   .   .   .   .   .   .   .   .   .   .   .   9, 10, 13, 29

Norman J. Singer and J.D. Shambie Singer, *Statutes and Statutory Construction*,
7th ed., 2007 new ed., vol. 2A, Thomson – West, 398–412 . . . . . . . 11

U.S. Dept. of the Interior, Office of Insular Affairs, "All OIA Jurisdictions" . . . 20

U.S. Dept. of the Interior, Office of Insular Affairs, "U.S. Territories under
U.S. Fish and Wildlife Jurisdiction or Shared with Johnston Atoll
Chemical Agent Disposal System (JACADS)" . . . . . . . . . 20

*Webster's Dictionary*, 1828 ed., s.v. "State" . . . . . . . . . . . . 6

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | CIVIL NO. 6:14-cv-595 |
| JOHN PARKS TROWBRIDGE, JR., | § | |
| BRIGHT FUTURE INVESTMENTS, INC., | § | |
| IDEAL ABILITIES, and | § | |
| TYLER COUNTY TAX OFFICE, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT JOHN PARKS TROWBRIDGE, JR.'S ANSWER

NOW COMES John Parks Trowbridge, Jr., specially and not generally, in the above-captioned matter, and respectfully and without attorney, to request that this Honorable Court take judicial notice of the enunciation of principles as stated in *Haines v. Kerner*, 404 U.S. 519, wherein the court directed that the pleadings of those unschooled in law, such as Defendant JOHN PARKS TROWBRIDGE, JR. (the "Defendant"), shall be held to less stringent standards than formal pleadings drafted by lawyers and, pursuant to FEDERAL RULES OF CIVIL PROCEDURE 8(b)(1)(B) and (c)(1), avoid the instant Complaint by way of the within special pleading.

### AVOIDANCE FOR FRAUD

Defendant hereby confesses the truth of the facts recited in the instant Complaint and admits the apparent truth of Plaintiff's allegations and right of action; and alleges fact of actual legislative fraud on the part of Congress and connivance therewith on the part of claimant United States and counsel for claimant United States that avoids any apparent right of action against Defendant's property.

In support hereof, Defendant would show the Court the attached Affidavit in Support of Defendant John Parks Trowbridge, Jr.'s Answer, made fully part hereof and included herein by reference as though set forth in full.

### BASIS OF THIS LAWSUIT: NAKED PRESUMPTION OF LIABILITY TO INCOME TAX

Title 26 C.F.R. § 1.1-1(a)(1), provides, in pertinent part,

> Section 1 of the Code imposes an income tax on the income of every individual who is a citizen or resident of the United States and, to the extent provided by section 871(b) or 877(b), on the income of a nonresident alien individual. . . . .

The foundation of this case is Plaintiff's presumption that Defendant is an *individual*[1] of one of the species enumerated above and therefore obligated to discharge the federal tax liability alleged in the Complaint. Plaintiff is incapable of producing competent evidence that will support said presumption because to do so would be to admit of fraud and work against interest.

### JURISDICTIONAL PROVISIONS OF THE CONSTITUTION

That certain Constitution, ordained, established, and implemented March 4, 1789, Independence Hall, Philadelphia, Pennsylvania (the "Constitution"), provides that Congress shall have two species of legislative power in mutually exclusive geographical areas: limited within the Union (Article 1 § 8(1–16)), and plenary without (Articles 1 § 8(17) and 4 § 3(2)).

The Supreme Court affirms these facts a few years later; to wit:

> It is clear that Congress, as a legislative body, exercise two species of legislative power: the one, limited as to its objects, but extending all over the Union: the other, an absolute, exclusive legislative power over the District of Columbia. . . . *Cohens v. Virginia*, 19 U.S. 264, 434, 6 Wheat. 265, 5 L.Ed. 257 (1821).

Consulting any news source today, however, it is clear that Congress now exercise personal legislative power—and United States District Judges and officers of the Department of

---

[1] the term "individual" means a citizen of the United States or an alien lawfully admitted for permanent residence . . . 5 U.S.C. *Government Organization and Employees* § 552a(a)(2).

Justice, personal jurisdiction—over not only the tiny percentage of Americans residing in federal territory, but the rest of the American population residing throughout the Union, as well.

For example: The advertized constitutional authority to impose an income tax is Article 1 § 8(1), which provides, in pertinent part, "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises . . ."—but every income taxpayer is susceptible to a criminal charge for a crime against the revenue laws, 26 U.S.C. §§ 7201–7241, and the levying, prosecution, and trying of such a charge, which happens on a routine basis, almost exclusively to Americans residing without Federal territory, requires personal jurisdiction.

If we are to believe that all United States District Judges and officers of the United States Department of Justice today maintain fidelity to their oath of office and the jurisdictional provisions of the Constitution when they indict, charge, arrest, prosecute, try, convict, and sentence to prison for crimes against the revenue laws, or acquit thereof, ordinary Americans whose fixed and permanent abode, source of earnings, domicil, and legal permanent residence is factually situate, *animus manendi*, without every section of territory occupied by the District of Columbia municipal corporation, we must look deeper for the actual constitutional authority upon which said officers rely to exercise personal jurisdiction over such Americans—and subject-matter jurisdiction over the property of other Americans similarly situated and domiciled, but not so charged.

### Two Different Governments, Two Different Legislatures

The difference between the American governmental paradigm and all others is that sovereignty resides in the People, and Congress have no personal legislative power over them, except as such may choose to establish residence, domicil, or legal residence in territory identified in Article 1 § 8(17) or 4 § 3(2) of the Constitution.

Upon implementation of the Constitution March 4, 1789, there is only one legislature in the District of Columbia: that provided in Article I thereof.  When Congress create and incorporate the Government of the District of Columbia February 21, 1871, however, they also create for themselves and assume the role of a second legislature, that of the District of Columbia municipal corporation; to wit, in pertinent part:

> *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That all that part of the territory of the United States included within the limits of the District of Columbia be, and the same is hereby, created into a government by the name of the District of Columbia, by which name it is hereby constituted a body corporate for municipal purposes, and may contract and be contracted with, sue and be sued, plea and be impleaded, have a seal, and exercise all other powers of a municipal corporation not inconsistent with the Constitution and laws of the United States and the provisions of this act.
>   . . . SEC. 18.  *And be it further enacted,* That the legislative power of the District shall extend to all rightful subjects of legislation within said District . . . and nothing herein shall be construed to deprive Congress of the power of legislation over said District in as ample manner as if this law had not been enacted.[2]

The national legislature exercises limited legislative power (subject-matter only) throughout the Union in what the Framers identify in the Constitution as the "States" and "United States"; the municipal, plenary legislative power (territorial, personal, and subject-matter) in geographical areas identified in Articles 1 § 8(17) and 4 § 3(2) of that instrument.

### STATES *VERSUS* COLUMBIA AND THE TERRITORIES

The Supreme Court explains the constitutional difference between, on the one hand, the states of the Union and, on the other, Columbia and the Territories:

---

[2] "An Act to provide a Government for the District of Columbia," ch. 62, 16 Stat. 419, February 21, 1871; later legislated in "An Act Providing a Permanent Form of Government for the District of Columbia," ch. 180, sec. 1, 20 Stat. 102, June 11, 1878, to remain and continue as a municipal corporation (brought forward from the Act of 1871, as provided in the Act of March 2, 1877, amended and approved March 9, 1878, *Revised Statutes of the United States Relating to the District of Columbia . . . 1873–'74* (in force as of December 1, 1873), sec. 2, p. 2); as amended by the Act of June 28, 1935, 49 Stat. 430, ch. 332, sec. 1 (Title 1, Section 102, District of Columbia Code (1940)).

On the part of the plaintiffs, it has been urged that Columbia is a distinct political society, and is therefore "a state" according to the definitions of writers on general law.

This is true. But as the act of Congress obviously uses the word "state" in reference to the term as used in the Constitution, it becomes necessary to inquire whether Columbia is a state in the sense of that instrument. The result of that examination is a conviction that the members of the American confederacy only are the states contemplated in the Constitution.

. . . These clauses show that the word "state" is used in the Constitution as designating a member of the union, and excludes from the term the signification attached to it by writers on the law of nations. . . . *Hepburn & Dundas v. Ellzey*, 6 U.S. 445, 452, 2 Cranch 445, 2 L.Ed. 332 (1805).

It has been attempted to distinguish a *Territory* from the district of Columbia; but the court is of opinion, that this distinction cannot be maintained. They may differ in many respects, but neither of them is a state, in the sense in which that term is used in the constitution. . . . *New Orleans v. Winter*, 1 Wheat. (U. S.) 91, 4 L. Ed. 44 (1816).

Residents of Columbia or the Territories are subject to the personal legislative power of Congress. The respective bodies politic residing in sections of territory occupied by the several commonwealths of the Union are not; enjoying rather the unalienable and constitutional Right of Liberty under the common law, free of subjection to the will of any other, such as their servants in Congress; to wit:

The same feudal ideas run through all their jurisprudence, and constantly remind us of the distinction between the Prince and the subject. No such ideas obtain here; at the Revolution, the sovereignty devolved on the people, and they are truly the sovereigns of the country, but they are sovereigns without subjects . . . and have none to govern but themselves; the citizens of America are equal as fellow citizens, and as joint tenants in the sovereignty. *Chisholm v. Georgia*, 2 U.S. 2 Dall. 419, 472 (1793).

#### CONGRESS SET ABOUT TO USURP THE LIBERTY OF THE AMERICAN PEOPLE

*Quæ ad unum finem locuta sunt, non debent ad alium detorqueri.* Words spoken to one end, ought not to be perverted to another. *Bouvier's Law Dictionary*, Third Revision (Being the Eighth Edition), by Francis Rawle (hereinafter "Bouvier's 8th"), p. 2155.

Notwithstanding the material opinions of the Supreme Court in *Hepburn* and *New Orleans*, *supra*, and literally dozens of legal principles to the contrary, Congress, "to provide

internal revenue" and "increase the revenue" (*infra*), effectively turn the jurisdictional provisions of the Constitution on their head by defining the proper nouns used therein to identify the bodies politic over whom Congress have no personal legislative power ("state" / "State" and "United States") to mean the same thing as the bodies politic over whom the Constitution authorizes them to exercise absolute personal legislative power (the District of Columbia and the territories / Territories); to wit:

> SEC. 182. *And be it further enacted,* That wherever the word state is used in this act it shall be construed to include the territories and the District of Columbia, where such construction is necessary to carry out the provisions of this act. "An Act to provide Internal Revenue to support the Government, to pay Interest on the Public Debt, and for other Purposes," Ch. 173, 13 Stat. 223, 306, June 30, 1864.

> TITLE XXXV.
> INTERNAL REVENUE.
> . . . SEC. 3140. The word "State," when used in this Title, shall be construed to include the Territories and the District of Columbia where such construction is necessary to carry out its provisions. *Revised Statutes of the United States, Passed at the First Session of the Forty-third Congress, 1873–'74*, p. 601, approved retroactively as of the Act of March 2, 1877, amended and approved as of the Act of March 9, 1878.

> TITLE I.—INCOME TAX.
> . . . SEC. 15. That the word "State" or "United States" when used in this title shall be construed to include any Territory, the District of Columbia, Porto Rico, and the Philippine Islands, when such construction is necessary to carry out its provisions. "An Act To increase the revenue, and for other purposes," Ch. 463, 39 Stat. 756, 773, September 8, 1916.

The primary sense of "state" and "State" as words found in the dictionary is political; the secondary, governmental; the tertiary, geographical. The greatest lexicographer in history, Noah Webster, makes no provision for "state" / "State" in a geographical sense; to wit, in pertinent part:

> STATE, *n.* . . .
> A political body, or body politic ; the whole body of people united under one government, whatever may be the form of the government.
> Municipal law is a rule of conduct prescribed by the supreme power in a *state*. *Blackstone.*
> More usually the word signifies a political body governed by representatives ; a commonwealth ; as the *States* of Greece ; the *States* of America. *Webster's Dictionary*, 1828 ed., s.v. "State."

## FIRST OF TWO LEGISLATIVE STRATAGEMS

Congress devise a plan to devest the American People of the unalienable and
constitutional Right of Liberty, ensnare them in income tax, and bring them under municipal rule
by getting them to (1) believe that the words of the Constitution authorize Congress to exercise
legislative power over them and their property, and (2) establish what can be construed as
domicil / legal residence in the District of Columbia, thereby justifying  exaction of income tax
and fines (collection of alleged Federal debt) from them as alleged taxpayers, tax cheats, and
commercial criminals—enforced, ultimately, if necessary, by legislative tribunal.

"*Cujusque rei potissima pars principium est.* The principal part of everything is the
beginning," Bouvier's 8th, p. 2130; and the first step of the initial stratagem is the Revenue Act
of June 30, 1864, *supra*, p. 6.

The manner in which Congress introduce the legislation that will be used to evade and
defeat the jurisdictional provisions of the Constitution and shanghai politically, as we shall see,
the American People into "voluntary" servitude under municipal rule, portends how Congress
will earn their reputation with Mark Twain, Will Rogers, and H. L. Mencken and augurs why
they remain today the most despised class in America[3]—i.e., amidst the chaos of the Civil War,
in one seemingly unremarkable sentence on the 84th page of an 84-page statute, in the 182nd of
182 sections, followed by silence thereafter—an M.O. which places them, according to
Blackstone, in the company of another certain municipal lawgiver, Caligula; to wit:

---

[3] In the annals of image problems, the banking industry ranks right up there .... er, down there ... in the
company of Congress, with a high-profile survey ranking Bank of America Corp. at the bottom of the
heap.

Five years after the financial crisis, the Reputation Institute survey said banking has a worse reputation
than Big Pharma, news outlets, oil companies and telecommunications firms -- though not so bad as
Congress. . . . *Los Angeles Times*, "Survey: Banking industry's reputation is nearly as bad as that of
Congress; BofA ranks last," August 29, 2013, http://articles.latimes.com/2013/aug/28/business/la-fi-mo-banks-reputation-20130828.

It [municipal law] is likewise "a rule *prescribed*."  Because a bare resolution, confined in the breast of the legislator, without manifesting itself by some external sign, can never be properly a law.  It is requisite that this resolution be notified to the people who are to obey it.  But the manner in which this notification is to be made, is matter of very great indifference.  It may be notified by universal tradition and long practice, which supposes a previous publication, and is the case of the common law of England.  It may be notified, *viva voce*, by officers appointed for that purpose, as is done with regard to proclamations, and such acts of parliament as are appointed to be publicly read in churches and other assemblies.  It may lastly be notified by writing, printing, and the like ;  which is the general course taken with all our acts of parliament.  Yet, whatever way is made use of, it is incumbent on the promulgators to do it in the most public and perspicuous manner ;  not like Caligula, who (according to Dio Cassius) wrote his laws in a very small character, and hung them up upon high pillars, the more effectually to ensnare the people. . . .  William Blackstone, *Commentaries on the Laws of England: Book the First*, A Reprint of the First Edition with Supplement (Dawsons of Pall Mall: London, 1966), 45–46.

### ACTUAL LEGISLATIVE FRAUD

The Congress as the instrumentality of sovereignty is endowed with certain powers to be exerted on behalf of the people in the manner and with the effect the Constitution ordains. The Congress cannot invoke the sovereign power of the people to override their will as thus declared.  *Perry v. United States*, 294 U.S. 330, 353 (1935).

The congressional legislation that effectuates the aforesaid deceits operates to override the will of the American People as declared in the Constitution through (1) unilateral summary constructive revision of that instrument via legislative fiat that operates to impute to certain words used therein a novel contrary meaning vis-à-vis that of March 4, 1789, a measure for which no authority exists, and (2) production in the mind of American men and women residing in the sections of territory occupied by the respective commonwealths of the Union, the false impression that legislation that purports to obtain against residents of a "state" / "State" or the "United States" (i.e., the District of Columbia or one of the territories / Territories), obtains against them personally, and constitutes, minimally, actual legislative fraud under color of law and office.

## IGNORANCE OF THE LAW EXCUSES NO ONE

*"Ignorance of law* consists of the want of knowledge of those laws which it is our duty to understand, and which every man is presumed to know," Bouvier's 8th, p. 1488, but understanding the statutes enacted by Congress is not possible without application of the same rules of statutory construction and interpretation that Congress and the Supreme Court use to legislate the law into existence and pronounce it thereafter; e.g.:

> It is presumable that Congress legislates with knowledge of our basic rules of statutory construction . . . *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991).

### CONSTRUCTION AND INTERPRETATION OF STATUTES

Linguistic inference canons provide guidelines about what the legislature likely meant, given its choice of some words and not others. The linguistic inference canons include classic logical canons such as *expressio unius*,[42] *noscitur a sociis*,[43] and *ejusdem generis*.[44] Other inferential rules encourage interpreters to follow the ordinary usage of text unless the legislature has itself defined the word or the phrase has acquired a technical meaning.[45] Because dictionaries report common usage, the dictionary rule supports consulting widely used dictionary definitions of terms the legislature has not defined.[46]

[24. 3 NORMAN J. SINGER & J.D. SHAMBIE SINGER, STATUTES AND STATUTORY CONSTRUCTION § 65A:13, at 797 (7th ed. 2008) [hereinafter SUTHERLAND].]

42. The inclusion of one thing indicates exclusion of others. *See* Tate v. Ogg, 195 S.E. 496, 499 (Va. 1938) (holding that where a statute applied to "'any horse, mule cattle, hog, sheep or goat,'" it did not apply to turkeys); 2A SUTHERLAND, *supra* note 24, § 47:23, at 404 (7th ed. 2007) (stating that where a list of things is designated, "all omissions should be understood as exclusions").

43. Literally, "it is known from its associates," but more usefully described as outlining the inference that ambiguous words may be illuminated by the words grouped with it in a statute. 2A SUTHERLAND, *supra* note 24, § 47:16 (7th ed. 2007); *see* Jarecki v. G.D. Searle & Co., 367 U.S. 303, 305–07 (1961) (given the word string "'resulting from exploration, discovery, or prospecting,'" the Court construed "discovery" to mean only discovery of mineral resources and to not include scientific discoveries).

44. Meaning "of the same kind" and the touchstone for inferences that particular words implicitly establish a class of objects and that provision applies to that class. 2A SUTHERLAND, *supra* note 24, § 47:17 (7th ed. 2007); *see* Heathman v. Giles, 374 P.2d 839, 839–40 (Utah 1962) (given the word string "'any sheriff, constable, peace officer, state road officer, or any other person charged with the duty of enforcement of the criminal laws of this state,'" the court held that prosecutors were not "'other person[s] charged with the duty of enforcement of the criminal laws'" because "other person[s]" is limited by the class described in the initial word string).

45. *See* MCI Telecomms. Corp. v. AT&T, 512 U.S. 218, 228 (1994) (using ordinary usage canon to hold that the Federal Communication Commission's authority to "modify" tariff requirements does not allow it to waive tariffs because "'[m]odify,' in [the Court's] view, connotes moderate change" and stating that "[i]t might be good English to say that the French

Revolution 'modified' the status of the French nobility—but only because there is a figure of speech called understatement and a literary device known as sarcasm").

46. *See* Muscarello v. United States, 524 U.S. 125, 128 (1998) (consulting the Oxford English Dictionary, Webster's Third New International Dictionary, and Random House Dictionary of the English Language Unabridged for the meaning of the word "carry"); 2A SUTHERLAND, *supra* note 24, § 46:2, at 162–64 (7th ed. 2007).[4]

## THE SUPREME COURT ON STATUTORY CONSTRUCTION

Deliberate congressional transmutation of the words "State" and "United States" into terms of art with a constitutionally opposite meaning, however fraudulent and absurd, nevertheless constitutes a clearly expressed legislative intention that the ordinary and popular meaning thereof is extrinsic to construction of the language of any statute in which they appear, and that the statutory definition and meaning thereof obtains exclusively; to wit:

> As in all cases involving statutory construction, "our starting point must be the language employed by Congress," *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979), and we assume "that the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). Thus "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2055, 64 L.Ed.2d 766 (1980). . . . *American Tobacco Company v. John Patterson*, No. 80-1199, 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982).

## JUNE 30, 1864, MEANING OF THE TERM OF ART "STATE"

> The words of a statute are to be taken in their ordinary and popular meaning, unless they are technical terms or words of art, in which case they are to be understood in their technical sense. . . . Henry Campbell Black, *Handbook on the Construction and Interpretation of the Laws* (St. Paul, Minn.: West Publishing Co., 1896), § 57, 128.

> Table 1. Linguistic Inference Canons . . .
> Ordinary usage: Follow ordinary usage of terms, unless the legislature gives them a specified or technical meaning.
>     Dictionary definition: Follow dictionary definitions of terms, unless the legislature has provided a specific definition. Jacob Scott, "Codified Canons and the Common Law of Interpretation," *The Georgetown Law Journal*, Vol. 98, Issue 2, January 2010, 357.

---

[4] Jacob Scott, "Codified Canons and the Common Law of Interpretation," *The Georgetown Law Journal*, Vol. 98, Issue 2, January 2010, 352–353.

Because Congress transform by statute the word "state" into a technical term / term of art, in matters of internal revenue no one may take it in any other than its technical sense.

The rule *expressio unius est exclusio alterius* (*supra*, p. 9, SCOTT n. 42), applies in this instance and is defined elsewhere, as well; e.g., in pertinent part:

> § 47:23   Expressio unius est exclusio alterius
> As the maxim is applied to statutory interpretation, where . . . the persons or things to which it refers are designated, there is an inference that all omissions should be understood as exclusions. The maxim does not apply to every statutory listing or grouping. It has force only when the items expressed are members of an associated group or series, justifying the inference that the items not mentioned were excluded by deliberate choice. [Extensive footnoting of cases omitted.] Norman J. Singer and J.D. Shambie Singer, *Statutes and Statutory Construction*, 7th ed., 2007 new ed., vol. 2A, Thomson – West, 398–412.

> *Expressio unius est exclusio alterius.* The expression of one thing is the exclusion of another. Co. Litt. 210 ;  Broom, Max. 607, 651 . . . 36 Fed. 880 ;  104 U. S. 25, 26 L. Ed. 637. It is a rule of construction. 222 U. S. 513, 32 Sup. Ct. 117, 56 L. Ed. 291. Bouvier's 8th, p. 2134.

> The rule *expressio unius est exclusio alterius* (the inclusion of the one is the exclusion of the other): when a list of specific items is not followed by general words it is to be taken as exhaustive. For example, "weekends and public holidays" excludes ordinary weekdays. *A Dictionary of Law*, 7th ed., Jonathan Law and Elizabeth Martin, eds. (Oxford University Press: Oxford, 2009), 295.

Application of *expressio unius est exclusio alterius* to Sec. 182 of the Revenue Act of June 30, 1864, *supra*, p. 6, reveals: The states as of that date are the bodies politic of the District of Columbia, Arizona Territory, Colorado Territory, Dakota Territory, Indian (Oklahoma) Territory, Montana Territory, Nebraska Territory, Nevada Territory, New Mexico Territory, Utah Territory, and Washington Territory and no other. Congress exclude by deliberate choice from the meaning of said definition every body politic of the 36 commonwealths of the Union.

## MEANING OF "STATE" IN THE REVISED STATUTES OF 1873–'74

Application of the same rule to the definition of "State" in the Revised Statutes of 1873–'74, *supra*, p. 6, reveals that: For purposes of internal revenue, "State" means the body politic of

the District of Columbia, Alaska Territory, Arizona Territory, Dakota Territory, Indian

(Oklahoma) Territory, Midway Atoll Territory, Montana Territory, Nevada Territory, New

Mexico Territory, Utah Territory, or Washington Territory and no other.

### MEANING OF "UNITED STATES" IN THE REVENUE ACT OF SEPTEMBER 8, 1916

The Revenue Act of September 8, 1916, *supra*, p. 6, is the first appearance of "United

States" as a technical term / term of art per se.  Application of *expressio unius est exclusio*

*alterius* shows that the full extent of the meaning of the definition provided in Sec. 15 thereof is

the body politic of the District of Columbia and the Territories of Alaska, Hawaii, American

Samoa, Guam, Midway Islands, and the Panama Canal Zone and no other.

### SOCIAL SECURITY ACT OF AUGUST 14, 1935

The Social Security Act of August 14, 1935 (the "Social Security Act"), provides, in

pertinent part:

> SECTION 1101.
> (a) When used in this Act-
>     (1) The term State (except when used in section 531) includes Alaska, Hawaii, and the District of Columbia.
>     (2) The term United States when used in a geographical sense means the States, Alaska, Hawaii, and the District of Columbia.
> . . . (b) The terms includes and including when used in a definition contained in this Act shall not be deemed to exclude other things otherwise within the meaning of the term defined.

To identify the geographical "United States" of the Social Security Act, we must first

ascertain the meaning of "State," which uses another Social Security Act-term within its

provisions: "includes."

### "INCLUDES AND INCLUDING"

Any controversy as to whether "includes" is a term of enlargement or one of limitation

dissolves upon close inspection.  The above definition of "includes and including" is a hybrid

composite of two of the principal rules of statutory construction, *expressio unius est exclusio*

*alterius* and *ejusdem generis*, discussed *supra*, p. 9, SCOTT n. 44, and defined elsewhere, in

pertinent part, as follows:

> EJUSDEM GENERIS (Lat.).  Of the same kind.
> In the construction of laws, wills, and other instruments, general words following
> an enumeration of specific things are usually restricted to things of the same kind
> (*ejusdem generis*) as those specifically enumerated. . . . Bouvier's 8th, p. 979.
>
> The rule *ejusdem generis* (of the same kind): when a list of specific items
> belonging to the same class is followed by general words (as in "cats, dogs, and
> other animals"), the general words are to be treated as confined to other items of
> the same class (in this example, to other domestic animals). *A Dictionary of Law*,
> 7th ed., Jonathan Law and Elizabeth Martin, eds. (Oxford University Press:
> Oxford, 2009), 295.

Use of "includes" or "including" in the definition of any Social Security Act term

signifies that such definition is at once expansionary and exclusionary: *expansionary* in that it

comprehends other things not listed in the definition; *exclusionary* in that such other things are

confined / limited to those of the same kind or class as those specifically enumerated.

Congress state this concept succinctly in pertinent part of 27 C.F.R. § 72.11; to wit: "The

terms 'includes' and 'including' do not exclude things not enumerated which are in the same

general class."

Section 1101(a)(1) of the Social Security Act provides that "The term State (except when

used in section 531) includes Alaska, Hawaii, and the District of Columbia."  Wherefore,

application of §1101(b) thereof (re "includes and including") means that the definition

nevertheless comprehends other things of the same kind (bodies politic of the same associated

group) as Alaska, Hawaii, and the District of Columbia, just not specifically listed therein.

On August 14, 1935, there are a total of six others: American Samoa, Guam, Midway

Islands, Panama Canal Zone, Puerto Rico, and the Virgin Islands.  The three enumerated in the

definition, however, have particular distinction in that they are all members of a smaller, more

exclusive, associated group; *specifically*, they are all political societies whose members have

status of *citizen of the United States*; to wit: Alaska, as of July 20, 1868[5]; Hawaii (retroactively),

as of August 12, 1898[6]; and District of Columbia, *circa* July 16, 1790.[7]

On August 14, 1935, there are only two other such political societies of the aforesaid

other six whose members have status of *citizen of the United States*: (1) Puerto Rico, as of March

2, 1917[8]; and (2) the Virgin Islands, as of February 25, 1927.[9]

Wherefore: The said term "State" means the body politic of the District of Columbia or

that of the Territory of Alaska, Hawaii, Puerto Rico, or the Virgin Islands and no other.

### POLITICAL / GOVERNMENTAL SENSE *VERSUS* GEOGRAPHICAL

Whereas, Congress expressly define the Social Security Act-term "United States" in a

geographical sense, but not "State," it is clear that Congress do not intend "State" in a

geographical sense; to wit:

> "Where Congress includes particular language in one section of a statute but
> omits it in another section of the same Act, it is generally presumed that Congress
> acts intentionally and purposely in the disparate inclusion or exclusion." United
> States v. Wong Kim Bo, 472 F.2d 720, 722 (CA5 1972). See United States v.
> Wooten, 688 F.2d 941, 950 (CA4 1982). *Russello v. United States,* 464 U.S. 16,
> 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983).

Members of the five aforesaid "States" are *citizens of the United States*, i.e., citizens of

the Federal government,[10] a.k.a. District of Columbia municipal corporation, *supra*, p. 4, over

whom the Constitution authorizes Congress to exercise personal legislation.

The Social Security Act-geographical "United States" is the collective of the respective

sections of territory occupied by the five aforesaid bodies politic ("States" / Territories): the

District of Columbia, Alaska, Hawaii, Puerto Rico, and the Virgin Islands and no other thing.

---

[5] Act of July 20, 1868, ch. 186, 107; 15 Stat. at L. 167, U. S. Comp. Stat. 1901, p. 2277.
[6] Act of April 30, 1900, Pub. L. 56–331, Ch. 339, 31 Stat 141.
[7] Act of July 16, 1790, 1 Stat. 130.
[8] Pub.L. 64-368, 39 Stat. 951.
[9] Title 8 U.S.C. § 1406.
[10] A citizen of the United States is a citizen of the Federal government . . . *Kitchens v. Steele*, 112 F.Supp.
383, Dist. Court W.D. Missouri (1953).

### NOVEL DEFINITIONS OF "STATE," "UNITED STATES" COMPREHEND ONLY THE DISTRICT OF COLUMBIA AND THE TERRITORIES

No preceding statutory definition of "state," "State," or "United States" comprehends any resident of any section of territory occupied by any commonwealth united by and under authority of the Constitution and admitted into the Union.  Acts of Congress using the above terms obtain only against residents of geographical area over which Congress have power of exclusive legislation, i.e., the District of Columbia, and the territory / places / property identified in Articles 1 § 8(17) and 4 § 3(2) of the Constitution, and therefore are not national but municipal legislation.

### AMERICANS APPEAR TO WAIVE THE CONSTITUTIONAL RIGHT OF LIBERTY UPON ACQUIRING THE RIGHT TO RECEIVE SOCIAL SECURITY BENEFITS

Title 5 U.S.C. - GOVERNMENT ORGANIZATION AND EMPLOYEES
. . . § 552a - Records maintained on individuals
(a) Definitions.— For purposes of this section—
   . . . (2) the term "individual" means a citizen of the United States or an alien lawfully admitted for permanent residence;
   . . . (13) the term "Federal personnel" means officers and employees of the Government of the United States, members of the uniformed services (including members of the Reserve Components), individuals entitled to receive immediate or deferred retirement benefits under any retirement program of the Government of the United States (including survivor benefits).

The doctrine that a government, state or federal, may not grant a benefit or privilege on conditions requiring the recipient to relinquish his constitutional rights is now well established.  [Citations omitted.]  *Jones v. State Board of Education of and for the State of Tennessee*, 397 U.S. 31, 90 S.Ct. 779, 25 L.Ed.2d 27 (1970).

Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.  *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

Date-coincident with the Great Depression,[11] American non-citizen non-residents of the United States are induced to apply for and enroll in Social Security, a program administered by

---

[11] The Depression was the *triggering event* that finally persuaded Americans to adopt a social insurance system. Larry DeWitt, "The Development of Social Security in America," Social Security Bulletin, Vol. 70, No. 3, 2010, U.S. Social Security Administration, www.ssa.gov/policy/docs/ssb/v70n3/v70n3p1.html.

an instrumentality of the District of Columbia municipal corporation and offering potential benefits for which they are not legally eligible by reason of foreign residence, domicil, and legal residence; and thereafter appear to execute and enter into a species of conditional / executory contract (though not under seal) known as an *assessment contract*,[12] and:

1.    Waive their Right of Liberty (Constitution, Preamble).

2.    Volunteer to pay a municipal tax (income tax) for which, other than by way of mistake as a consequence of fraud, they have no duty to pay; to wit:

> Social Security Act of August 14, 1935.
> . . . TITLE VIII . . .
> INCOME TAX ON EMPLOYEES
> SECTION 801. In addition to other taxes, there shall be levied, collected, and paid upon the income of every individual a tax . . .
>     TITLE XI . . .
> SECTION 1101.
> (a) When used in this Act-
>     . . . (6) The term employee includes an officer of a [District of Columbia municipal] corporation.

3.    Establish a relation with the corporate District of Columbia that can be used to justify a presumption that they are employees / officers thereof and therefore residents of the District of Columbia, and "rightful subjects of legislation within said District," as originally contemplated in Section 18 of the Act of February 21, 1871, *supra*, p. 4, no matter where in the world they may live, work, or travel—an unconscionable bargain.

### MODERN SOCIAL SECURITY TERMS "STATE," "UNITED STATES"

Title 42 U.S.C. Chapter 7 *Social Security* § 1301 *Definitions* provides, in pertinent part:

> (a) When used in this chapter—
>     (1) The term "State", except where otherwise provided, includes the District of Columbia and the Commonwealth of Puerto Rico . . . Virgin Islands and Guam. . . .

---

[12] —assessment contract.  One wherein the payment of the benefit is in any manner or degree dependent on the collection of an assessment levied on persons holding similar contracts. *Black's Law Dictionary*, 2nd ed., p. 95.

American Samoa, the Northern Mariana Islands, and the Trust Territory of the
Pacific Islands. . . .
   (2) The term "United States" when used in a geographical sense means, except
where otherwise provided, the States.
. . . (b) The terms "includes" and "including" when used in a definition contained
in this chapter shall not be deemed to exclude other things otherwise within the
meaning of the term defined.

The definition in 42 U.S.C. § 1301(b) is substantially the same as that in Sec. 1101(b) of

the Social Security Act and means exactly the same thing.  Applying the meaning of the Title 42

U.S.C. term "includes" to the 42 U.S.C. § 1301(a)(1) term "State" reveals that said bodies politic

are the District of Columbia, Guam, American Samoa, the Commonwealth of Puerto Rico, the

Virgin Islands, and the Commonwealth of the Northern Mariana Islands and no other.[13]

Wherefore, the Title 42 U.S.C. Chapter 7 geographical United States consists of the

collective of respective sections of territory occupied by the six aforesaid bodies politic / States.

### MEANING OF THE TITLE 26 U.S.C. TERMS OF ART "UNITED STATES," "STATE"

The nexus between Social Security and the Internal Revenue Code is Sec. 801 of the

original Social Security Act and 26 U.S.C. § 6109(d) *Use of social security account number*.

The controlling definition of the Title 26 U.S.C. terms "United States," "State," and

"Includes and including" is found at 26 U.S.C. § 7701, which provides, in pertinent part:

   (a) When used in this title, where not otherwise distinctly expressed . . .
   (9)   United States
         The term "United States" when used in a geographical sense includes
         only the States and the District of Columbia.
   (10) State
         The term "State" shall be construed to include the District of Columbia,
         where such construction is necessary to carry out provisions of this title.
. . . (c) Includes and including
         The terms "includes" and "including" when used in a definition contained in
         this title shall not be deemed to exclude other things otherwise within the
         meaning of the term defined.

---

[13] The Trust Territory of the Pacific Islands per se ceases to exist in any degree as of May 25, 1994, upon
termination of the trusteeship for the last of the Trust's districts, the Palau district.

Because the controlling Title 26 U.S.C. definition of the term "includes," found in 26

U.S.C. § 7701(c) and used in the above definition of "United States," is substantially identical[14]

to that of § 1101(b) of the Social Security Act of August 14, 1935 (*supra*, p. 12), the derivative

product of such exercise is foreknown and therefore unnecessary and is omitted here.

Wherefore, re the full extent of the meaning of "States" (which appears in 26 U.S.C. §

7701(a)(9)), the controlling definition of "State," 26 U.S.C. § 7701(a)(10), reveals very little;

only that the District of Columbia shall be *construed* to be a State.

The preamble to the above controlling definition of the terms "United States" and "State"

provides, however, at 26 U.S.C. § 7701(a), an instruction as to how to identify any other State,

*besides* the District of Columbia, that is embraced by the said definition of "United States"; to

wit: "When used in this title, where not otherwise distinctly expressed . . ."

"State" is *otherwise distinctly expressed* in 26 U.S.C. § 3121(e)(1); to wit:

> The term "State" includes the District of Columbia, the Commonwealth of Puerto
> Rico, the Virgin Islands, Guam, and American Samoa.

Use of the term "includes" in the 26 U.S.C. § 3121(e)(1) definition of "State" requires the

same application as with §1101(a)(1), "State," of the Social Security Act of August 14, 1935.

Wherefore, we need to identify other members of the associated group of "States" (bodies

politic) that are of the same kind as those enumerated in 26 U.S.C. § 3121(e)(1), just not listed.

In Title 26 U.S.C., the District of Columbia is a State only because the controlling

definition thereof construes it to be such and makes no mention of any other State.  Wherefore,

we can disregard the District of Columbia as being a member of the same associated group or of

the same kind listed in the definition of "State" in 26 U.S.C. § 3121(e)(1).

---

[14] *Non differunt quæ concordant re, tametsi non in verbis iisdem.* Those things which agree in substance,
though not in the same words, do not differ.  Bouvier's 8th, p. 2149.

Searching the Secretary of the Treasury's website, www.irs.gov, we discover that the

Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa are all insular

U.S. possessions that have their own governments and tax systems; to wit, in pertinent part:

> U.S. possessions can be divided into two groups:
>
> 1.  Those that have their own governments and their own tax systems (Puerto Rico, U.S. Virgin Islands, Guam, American Samoa, and The Commonwealth of the Northern Mariana Islands), and
> 2.  Those that do not have their own governments and their own tax systems . . .
>
> The governments of the first group of territories impose their own income taxes and withholding taxes on their own residents. . . .[15]

In addition to the four insular U.S. possessions with their own respective government and

tax system listed in 26 U.S.C. § 3121(e)(1), there is one and only one other member of the same

associated group: the Commonwealth of the Northern Mariana Islands.

Title 26 U.S.C. § 7701(a)(9) *United States* is the controlling definition of that term and

comprehends the respective sections of territory occupied by the bodies politic / "States" of the

District of Columbia, Commonwealth of Puerto Rico, Virgin Islands, Guam, American Samoa,

and Commonwealth of the Northern Mariana Islands and no other—the exact same "States" /

bodies politic as 42 U.S.C. Chapter 7 *Social Security* § 1301(a)(1).

## "THE STATES" OF THE UNITED STATES CODE

Title 4 U.S.C. Chapter 4 *The States* provides, in pertinent part:

> § 106 - Same; income tax
>     (a) No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area. . . .

---

[15] IRS.gov, "Persons Employed In a U.S. Possession / Territory - FIT," http://www.irs.gov/Individuals/International-Taxpayers/Persons-Employed-In-U.S.-Possessions.

§ 110 - Same; definitions
As used in sections 105–109 of this title—
. . . (d) The term "State" includes any Territory or possession of the United
States.

Application of *expressio unius est exclusio alterius* to 4 U.S.C. §110(d) reveals that for

purposes of income tax under 4 U.S.C. § 106, "State" means the bodies politic of the District of

Columbia, Guam, American Samoa, Commonwealth of Puerto Rico, Virgin Islands,

Commonwealth of the Northern Mariana Islands, Republic of the Marshall Islands, Federated

States of Micronesia, Republic of Palau, Palmyra Atoll, Wake Atoll, Baker Island, Howland

Island, Jarvis Island, Johnston Atoll, Midway Atoll, North Island – JACADS, Sand Island,

Kingman Reef, or Navassa Island and no other.[16]

The only 4 U.S.C. § 110(d) State whose citizens are of the subject of Title 26 U.S.C.,

however, is the State of District of Columbia (*supra*, p. 19, n. 15).  No commonwealth of the

Union, e.g., Texas, is a Title 4 U.S.C. State of the United States.

### FROM RATIONALITY TO POLITICAL / GEOGRAPHICAL ABSURDITY

As of December 29, 1845, Texas is admitted into the Union and the section of territory

occupied by the commonwealth of Texas is part of what is known at that time as the United

States.

As of June 30, 1864, Congress define expressly the common noun "state" to (1) include

only the respective bodies politic of the territories and District of Columbia, *supra*, p. 6, and (2)

exclude impliedly that of Texas and the other 35 commonwealths united by and under authority

of the Constitution and admitted into the Union as of that date.

---

[16] U.S. Dept. of the Interior, Office of Insular Affairs, "All OIA Jurisdictions,"
http://www.doi.gov/oia/islands/index.cfm; and "U.S. Territories under U.S. Fish and Wildlife Jurisdiction or Shared
with Johnston Atoll Chemical Agent Disposal System (JACADS),"
http://www.doi.gov/oia/islands/islandfactsheet2.cfm.

As of March 9, 1878 (retroactive to December 1, 1873), *supra*, p. 6, Congress define expressly "State" to include only the respective bodies politic of the Territories and District of Columbia and exclude impliedly those of all the component commonwealths of the Union.

As of today in Title 26 U.S.C. and every other title of the United States Code, Congress define expressly the proper noun "United States" in a geographical sense to include only the respective sections of territory occupied by the District of Columbia and certain (depending on the particular title) of the Territories / possessions and exclude impliedly those occupied by the several commonwealths of the Union.

There is no basis in law to include Texas as a Title 26 U.S.C. State of the United States.

### TWO TYPES OF LOWER INFERIOR COURT

Re the bodies politic identified in the Constitution and discussed supra, the M.O. of Congress is to legislate the politically *inferior* (District of Columbia and the Territories), to be known by the same common or proper noun or name as is the politically *superior* (State and United States), and then exploit the American People's inability to deal with the absurdity.

And so it is with lower non-appeals inferior courts.

The Supreme Court identifies the respective type of lower non-appeals inferior court authorized to exercise jurisdiction in territory occupied by one of the component commonwealths of the Union and territory identified in Articles 1 § 8(17) and 4 § 3(2) of the Constitution; to wit:

> The United States District Court is not a true United States court established under article 3 of the Constitution to administer the judicial power of the United States therein conveyed. It is created by virtue of the sovereign congressional faculty, granted under article 4, 3, of that instrument, of making all needful rules and regulations respecting the territory belonging to the United States. The *resemblance* of its jurisdiction to that of true United States courts, in offering an opportunity to nonresidents of resorting to a court not subject to local influence, does not change its character as a mere territorial court. *Balzac v. People of Porto Rico*, 258 U.S. 298, 312 (1922).

The term 'District Courts of the United States,' as used in the rules, without an addition expressing a wider connotation, has its historic significance. It describes the constitutional courts created under article 3 of the Constitution. Courts of the Territories are legislative courts, properly speaking, and are not District Courts of the United States. We have often held that vesting a territorial court with jurisdiction similar to that vested in the District Courts of the United States does not make it a 'District Court of the United States.' Reynolds v. United States, 98 U.S. 145 , 154; The City of Panama, 101 U.S. 453 , 460; In re Mills, 135 U.S. 263, 268 , 10 S.Ct. 762; McAllister v. United States, 141 U.S. 174, 182 , 183 S., 11 S.Ct. 949; Stephens v. Cherokee Nation, 174 U.S. 445, 476 , 477 S., 19 S.Ct. 722; Summers v. United States, 231 U.S. 92, 101 , 102 S., 34 S.Ct. 38; United States v. Burroughs, 289 U.S. 159, 163 , 53 S.Ct. 574. Not only did the promulgating order use the term District Courts of the United States in its historic and proper sense, but the omission of provision for the application of the rules to the territorial courts and other courts mentioned in the authorizing act clearly shows the limitation that was intended. *Mookini v. United States*, 303 U.S. 201, 205 (1938).

The Constitution provides for constitutional courts expressly in Article 3 § 1, territorial courts impliedly in Article 4 § 3(2).

There are two legislatures in the District of Columbia (*supra*, p 4); that of the national government, as provided in the Constitution, and that of the municipal government, as provided in the Act of February 21, 1871, *supra*, p. 4, each of which goes by the same name: "Congress." The legislature of the former creates constitutional courts; the legislature of the latter, territorial courts—both by Act of Congress.

Title 28 U.S.C. does not provide a definition for the territorial court identified in *Balzac* and *Mookini*, *supra*, i.e., the "United States District Court."  Notwithstanding this omission, however, because the judges of this particular species of lower non-appeals inferior court are entitled to hold office during good behavior, 28 U.S.C. § 451 provides, albeit impliedly, for inclusion of each such court as a "court of the United States," just like the other court fora, supreme and inferior, enumerated in the definition of said term; to wit, in pertinent part:

TITLE 28—JUDICIARY AND JUDICIAL PROCEDURE.
. . . CHAPTER 21—GENERAL PROVISIONS APPLICABLE TO COURTS AND JUDGES

§ 451. Definitions
As used in this title:
The term "court of the United States" includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.
. . . The term "judge of the United States" includes judges of the courts of appeals, district courts, Court of International Trade and any court created by Act of Congress, the judges of which are entitled to hold office during good behavior.

Irrespective of any nominal collective common or proper noun / name Congress may use to group certain inferior court fora together, the geographical area over which a particular lower non-appeals inferior court exercises its peculiar species of jurisdiction reveals whether said court is an Article III constitutional or Article IV territorial court; to wit:

- Constitutional courts exercise limited jurisdiction in certain counties situate in sections of territory occupied by commonwealths united by and under authority of the Constitution and admitted into the Union; and

- Territorial courts exercise plenary jurisdiction without the geographical area occupied by the aforesaid commonwealths, in territory described in Articles 1 § 8(17) and 4 § 3(2) of the Constitution.

### SECOND CONGRESSIONAL LEGISLATIVE STRATAGEM: CONGRESS GIVE CONSTITUTIONAL AND TERRITORIAL COURTS THE SAME NAME

Notwithstanding that Title 28 U.S.C. provides no definition for the territorial court identified *supra* in *Balzac* and *Mookini*, i.e., the "United States District Court," said title nevertheless provides, in pertinent part:

§ 132. Creation and composition of district courts
(a) There shall be in each judicial district a district court which shall be a court of record known as the United States District Court for the district.
. . . (June 25, 1948, ch. 646, 62 Stat. 895; Pub. L. 88–176, § 2, Nov. 13, 1963, 77 Stat. 331.)

We know from the Supreme Court in *Balzac*, however, that the United States District Court is not a true Article III court but a mere territorial court (*Balzac*, *supra*, p. 21).

Whereas, (1) the bench officer in the instant civil lawsuit goes by the title "United States District Judge," for which, like "United States District Court," there is no definition in Title 28 U.S.C., (2) said bench officer is a judge of a court created by Act of Congress and entitled to hold office during good behavior, and (3) this forum is known by the name "United States District Court": It is essential for jurisdictional purposes to ascertain whether the Court is "a true United States court established under article 3 of the Constitution," *Balzac*, *supra*, p. 21, or "a mere territorial court," *id.*

### LOWER INFERIOR COURTS AND FEDERAL DEBT COLLECTION

The United States Code provides, in pertinent part:

> TITLE 28—JUDICIARY AND JUDICIAL PROCEDURE
> . . . CHAPTER 176—FEDERAL DEBT COLLECTION PROCEDURE
> § 3001. Applicability of chapter
>    (a) IN GENERAL.—Except as provided in subsection (b), the[1] chapter provides the exclusive civil procedures for the United States—
>        (1) to recover a judgment on a debt; or
>        (2) to obtain, before judgment on a claim for a debt, a remedy in connection with such claim.
>    (b) LIMITATION.—To the extent that another Federal law specifies procedures for recovering on a claim or a judgment for a debt arising under such law, those procedures shall apply to such claim or judgment to the extent those procedures are inconsistent with this chapter.
>    (c) AMOUNTS OWING OTHER THAN DEBTS.—This chapter shall not apply with respect to an amount owing that is not a debt or to a claim for an amount owing that is not a debt.
> [1] So in original. Probably should be "this".
>
> § 3002. Definitions
>    As used in this chapter:
>        (1) "Counsel for the United States" means—
>            (A) a United States attorney, an assistant United States attorney designated to act on behalf of the United States attorney, or an attorney with the United States Department of Justice or with a Federal agency who has litigation authority;

. . . (2) "Court" means any court created by the Congress of the United States, excluding the United States Tax Court.

(3) "Debt" means—

. . . (B) an amount that is owing to the United States on account of a[n] . . . assessment, penalty . . . interest, tax . . . but that is not owing under the terms of a contract originally entered into by only persons other than the United States;

and includes any amount owing to the United States for the benefit of an Indian tribe or individual Indian, but excludes any amount to which the United States is entitled under section 3011(a).

. . . (8) "Judgment" means a judgment, order, or decree entered in favor of the United States in a court and arising from a civil or criminal proceeding regarding a debt.

. . . (15) "United States" means—

(A) a Federal corporation;

(B) an agency, department, commission, board, or other entity of the United States; or

(C) an instrumentality of the United States.

Because this cause is an action to reduce to judgment a claim consisting of (alleged) federal income tax assessments against Defendant and to collect (alleged) taxes, penalties, and interest due in respect thereof, the subject matter of said civil proceeding is a kind of (alleged) debt, 28 U.S.C. §3002(3)(B), against which the provisions of Title 28 U.S.C. Chapter 176 *Federal Debt Collection Procedure* obtain.

### TITLE 28 U.S.C. CHAPTER 176 TERMS OF ART "COURT" AND "UNITED STATES"

Title 28 U.S.C. § 3002(2), *supra*, provides "'Court' means any court created by the Congress of the United States, excluding the United States Tax Court."

It is clear that the trial court is not the United States Tax Court.

Said definition of "court" / "Court" however, uses within its provisions another 28 U.S.C. § 3002 term, "United States." Wherefore, before we can determine the full extent of the meaning of the 28 U.S.C. § 3002(2) definition of "court" / "Court" we must account for the meaning of "United States" in 28 U.S.C. § 3002(15).

Whereas, parts (B) and (C) 28 U.S.C. § 3002(15) use "United States" as a principal part of their respective definition of "United States," making the meaning of said definitions unclear / uncertain / ambiguous and undeterminable unless the definition in part (A) is applied thereto: Part (A) of 28 U.S.C. § 3002(15) is the controlling definition of the three—and in Title 28 U.S.C. Chapter 176 *Federal Debt Collection Procedure*, "United States" means *a Federal corporation*.

Returning to the pertinent portion of 28 U.S.C. § 3002(2): The term "court" / "Court" means any court created by the Congress of the / *a Federal corporation*.

Whereas, there is only one Federal corporation that has a Congress, *supra*, p. 4: The Court is a court created by the legislature of the District of Columbia municipal corporation "by virtue of the sovereign congressional faculty, granted under article 4, 3 [of the Constitution]," *Balzac*, *supra*, p. 21, and therefore a territorial court whose jurisdiction is limited to geographical area identified in Article 1 § 8(17) or 4 § 3(2) of the Constitution.

### DEFENDANT'S RESIDENCE, DOMICIL, AND LEGAL RESIDENCE

The only material facts relating to jurisdiction is that Defendant resides, and Defendant's property is located, in Tyler County, Texas.  The geographical area occupied by Tyler County, Texas, is situate without every section of territory identified in Articles 1 § 8(17) and 4 § 3(2) of the Constitution and the jurisdiction of every territorial court.

The material / physical fact of Defendant's residence for the general purposes of life and major life interests, in the geographical area occupied by Tyler County, Texas, i.e., Defendant's "preeminent headquarters," bars peremptorily any claim that for the purpose of taxation / internal revenue Defendant resides in the District of Columbia; to wit:

> When one intends the facts to which the law attaches consequences, he must abide the consequences whether intended or not. 13. One can not elect to make his home in one place in point of interest and attachment and for the general purposes of life, and in another, where he in fact has no residence, for the purpose of

taxation. P. 426. 14. Physical facts of residence, united with major life interests may fix domicile — one's "preeminent headquarters." *Id.* 15. The burden of proof is on one who claims that an earlier domicile was abandoned for a later one. P. 427. *Texas v. Florida*, 306 U.S. 398 (1939).

For Plaintiff to prove Plaintiff's claims against Defendant and Defendant's property and that Defendant resides within the jurisdiction of the trial court, a legislative Article IV territorial tribunal, Plaintiff would have to produce evidence consistent with the following:

> To constitute a change of domicil, three things are essential: (1) Residence in another place [District of Columbia] ;  (2) an intention to abandon the old domicil [Texas] ;  and (3) an intention of acquiring a new one [District of Columbia] ;  or as some writers express it there must be an *animus non revertendi* and an *animus manendi,* or *animus et factum* [citations omitted.] . . . Bouvier's 8th, p. 921.

The Complaint of the Plaintiff is devoid of evidence of jurisdiction and Plaintiff is incapable of producing any, despite burden to do so if challenged; to wit:

> It is also hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction. See 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3522, at 62-65 (2d ed.1984); 15 J. Moore, Moore's Federal Practice § 102.14, at 102-24 (3d ed. 1998) ("The burden of proving all jurisdictional facts is on the party asserting jurisdiction."); see also Scelsa v. City University of New York, 76 F.3d 37, 40 (2d Cir.1996). That party must allege a proper basis for jurisdiction in his pleadings and must support those allegations with "competent proof" if a party opposing jurisdiction properly challenges those allegations, see, e.g., McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), or if the court sua sponte raises the question, see, e.g., Fed.R.Civ.P. 12(h)(3); Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). *Linardos v. Fortuna*, 157 F.3d 945 (2d Cir. 1998).

Because 28 U.S.C. § 451 provides (1) for both constitutional and territorial courts, and (2) that a court of either species can have the same name, i.e., "United States District Court," it is incumbent on Plaintiff not only to demonstrate that Defendant resides within the jurisdiction of a United States District Court, but also that the particular United States District Court that is this Court, is of the species of lower non-appeals inferior court that has jurisdiction in the geographical area in which Defendant resides.

The only competent evidence relating to Defendant's residence, domicil, or legal residence, attached hereto, establishes that Defendant is neither a resident of, domiciled in, nor a legal resident of the District of Columbia.

Whereas: There is no basis in law for any allegation in the Complaint; and

Whereas: The Court is a 28 U.S.C. § 3002(2) court created by the legislature of the District of Columbia municipal corporation (and authorized to exercise personal jurisdiction and enter judgments in criminal proceedings, 28 U.S.C. § 3002(8), involving the same kind of debt that Defendant is alleged to have, 28 U.S.C. § 3002(3)(B)) and a territorial court of plenary jurisdiction; and

Whereas: The Court is bereft of subject-matter jurisdiction in the geographical area occupied by Tyler County, Texas; and

Whereas: Defendant resides not within the jurisdiction of the Court, as alleged by Plaintiff in the Complaint, Dkt. #1, p. 1, ¶ 4,

Wherefore: The Court is bereft of jurisdiction over Defendant or Defendant's property.

## CONCLUSION

"*Uno absurdo dato, infinita sequuntur.* One absurdity being allowed, an infinity follow," Bouvier's 8th, p. 2166, and the solution to the seeming infinity of legislative absurdities abounding in the wake of the seminal legislative absurdities identified hereinabove, is sober application of the same universal rules and principles of statutory construction and interpretation used to make, declare, and apply all statutes.

The Supreme Court, re ordinary acts of Congress that alter the Constitution (e.g., ex post facto perversion of the meaning of words used therein by the Framers):

It is a proposition too plain to be contested, that the constitution controls any legislative act repugnant to it; or, that the legislature may alter the constitution by an ordinary act.

Between these alternatives there is no middle ground. The constitution is either a superior, paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and like other acts, is alterable when the legislature shall please to alter it.

If the former part of the alternative be true, then a legislative act contrary to the constitution is not law: if the latter part be true, then written constitutions are absurd attempts, on the part of the people, to limit a power in its own nature illimitable.

Certainly all those who have framed written constitutions contemplate them as forming the fundamental and paramount law of the nation, and consequently the theory of every such government must be, that an act of the legislature repugnant to the constitution is void. *Marbury v. Madison*, 5 U. S. 137, 176 (1803).

Using the jurisdictional provisions established in the Constitution as a benchmark, wherein "State" and "United States" are *words* and not *terms of art*, two simple guidelines allow anyone to discern whether a particular piece of congressional legislation is municipal:

1. If any object of the definition of "United States" provided in the legislation is any section of territory occupied by a body politic over whom the Constitution authorizes Congress to exercise personal legislation; or

2. If the legislation authorizes exercise of personal jurisdiction.

The former guideline describes Title 26 U.S.C.; the latter, Title 28 U.S.C. Chapter 176.

Whereas, Title 28 U.S.C. Chapter 176 provides a specific definition for "United States" ("Linguistic Inference Canons," *supra*, p. 10), Defendant requests the Court take judicial notice that (1) claimant United States is *a Federal corporation*, (2) counsel for claimant United States, 28 U.S.C. § 3002(1), are counsel for *a Federal corporation*, (3) the instant United States District Judge, i.e., the Court, is *a Federal corporation* District Judge, and (4) said counsel and trial court are all legislative-branch officers of the same for-profit commercial enterprise (*see* U.C.C. § 9-307(h)), claimant United States, i.e., the District of Columbia municipal corporation, *supra*, p. 4.

The aforesaid material facts constitute a breach of separation of powers (*see* also 28 U.S.C. § 528 re political conflict of interest) that removes any appearance of impartiality.

By reason of the above material facts and law, Defendant is not of the subject, nor Defendant's property of the object, of Title 26 U.S.C. or 28 U.S.C. Chapter 176, and is entitled to dismissal, with prejudice, for actual legislative fraud on the part of Congress and connivance therewith on the part of claimant United States and counsel for claimant United States.

## VERIFICATION

The undersigned, John Parks Trowbridge, Jr. (the "Undersigned"), hereby solemnly swears, declares, and states that the Undersigned has read the foregoing, attests to the veracity thereof, and as to this, the Undersigned is ready to verify.

## PRAYER OF JUDGMENT

WHEREFORE, Defendant prays the Court:

1. That the Court dismiss with prejudice the Complaint of the Plaintiff for clear absence of all jurisdiction;

2. That the Court order Plaintiff to terminate any and all assessments made and liens filed against Defendant or Defendant's property in respect of the Complaint;

3. That the Court order that Plaintiff pay Defendant restitution in full for all sums paid by Defendant and all sums levied / seized by Plaintiff's agents, over Defendant's lifetime, in respect of income tax; and

4. For such other and further relief that the Court may deem just and fair.

DATE:     August 6, 2014

John Parks Trowbridge, Jr.
9816 Memorial Boulevard #205
Humble, Texas
(281) 540-2329

Defendant John Parks Trowbridge, Jr.'s Answer
Page 30 of 30

# Affidavit in Support of Defendant
# John Parks Trowbridge, Jr.'s Answer

## Preamble.

In this Affidavit in Support of Defendant John Parks Trowbridge, Jr.'s Answer (this "Affidavit"), the term "Affiant" means John Parks Trowbridge, Jr. and is not intended to exclude derivative variations in the spelling thereof, such as JOHN PARKS TROWBRIDGE, JR.

## Introductory Certification.

Affiant hereby solemnly swears, declares, and states as follows:

1.      Affiant can competently state the matters set forth herein.

2.      Affiant has personal knowledge of the facts stated herein.

3.      All the matters set forth and facts stated herein are true, correct, and complete in accordance with Affiant's best firsthand personal knowledge and belief.

## Averments of John Parks Trowbridge, Jr.

4.      Affiant has neither seen nor been presented with any evidence, and likewise any material fact, that demonstrates that:

(a)     Affiant is one born within the exterior limits of that certain section of territory occupied by the District of Columbia;

(b)     Affiant is one wholly brought into separate existence within the exterior limits of that certain section of territory occupied by the District of Columbia;

(c)     At any point in time Affiant intends, of Affiant's own free will, to:

(i)     Renounce and renounces birthright in that certain republic (hereinafter the "American Union") created and established by way of confederation of those certain component commonwealths (numbering 50 at present, the

last of which being Hawaii, August 21, 1959) united by and under authority of that certain Constitution ordained, established, and implemented March 4, 1789, Independence Hall, Philadelphia, Pennsylvania, and adopts the political and municipal status involved by permanent residence of choice, with domiciliary intent, in that certain section of territory occupied by the District of Columbia;

(ii)  Establish and establishes personal presence in true, fixed, and permanent home, habitation, and principal abode, with domiciliary intent, within the exterior limits of that certain section of territory occupied by the District of Columbia;

(iii) Reside and resides within the exterior limits of that certain section of territory occupied by the District of Columbia for purposes of trade;

(iv) Reside and resides within the exterior limits of that certain section of territory occupied by the District of Columbia for purposes of carrying on Affiant's trade;

(v)  Go into and goes into the District of Columbia to engage in trade;

(vi) Reside and resides within the exterior limits of that certain section of territory occupied by the District of Columbia for purposes of carrying on Affiant's business;

(vii) Go into and goes into the District of Columbia to engage in business; or

(viii) Change and changes the country of domicil and legal residence in which Affiant's true, fixed, and permanent home, habitation, and principal abode is situate, from the American Union to any other sovereign jurisdiction; or

(d)    At any point in time, Affiant chooses, of Affiant's own free will, to establish and establishes, for legal purposes, Affiant's true, fixed, and permanent home, habitation, and principal abode in that certain section of territory occupied by the District of Columbia;

(e)    At any point in time, Affiant chooses, of Affiant's own free will, to establish and establishes, as the center of Affiant's legal relations and business, Affiant's true, fixed, and permanent home, habitation, and principal abode in that certain section of territory occupied by the District of Columbia;

(f)    Affiant's country of domicil is the District of Columbia;

(g)    Affiant's legal residence is the District of Columbia;

(h)    The sovereignty to whom Affiant owes allegiance is the District of Columbia;

(i)    Affiant is a citizen of the District of Columbia;

(j)    Affiant is a resident of the District of Columbia;

(k)    Affiant is a resident, for legal purposes, of the District of Columbia;

(l)    Affiant is a resident, for purposes of taxation, of the District of Columbia;

(m)    Affiant is a resident, for purposes of licensing, of the District of Columbia;

(n)    Affiant is domiciled in the District of Columbia;

(o)    Affiant is a citizen of the federal (United States) government;

(p)    Affiant is a United States Government employee; or

(q)    At the time of Affiant's apparent execution of that certain conditional (assessment) contract with the District of Columbia municipal corporation via said corporation's instrumentality, the United States Social Security

Administration, Affiant is located within the exterior limits of that section of

territory occupied by the District of Columbia,

and believes that none exists.

<u>Closing Certification.</u>

5.  The Undersigned Affiant, John Parks Trowbridge, Jr., hereby solemnly swears,

declares, and states that Affiant executes this Affidavit on Affiant's unlimited

liability, that Affiant can competently state the matters set forth herein, and that the

facts stated herein are true, correct, and complete in accordance with Affiant's best

firsthand personal knowledge and belief.

Further Affiant sayeth naught.

Date:   Subscribed this sixth day of the eighth month in the year of our Lord two thousand
fourteen [August 6, A.D. 2014] at Humble, Harris County, Texas.

_____
John Parks Trowbridge, Jr.
Affiant

_8-6-2014_____     _Catherine Diane Guion_____
Date                          Witness: Catherine Diane Guion

_8-6-2014_____     _Lucrecia Fay Taylor_____
Date                          Witness: Lucrecia Fay Taylor

_8-6-2014_____     _Rena Jeannette Parker_____
Date                          Witness: Rena Jeannette Parker

## CERTIFICATE OF SERVICE

I certify that on August 6, 2014, the foregoing DEFENDANT JOHN PARKS

TROWBRIDGE, JR.'S ANSWER was served via United States Mail, postage pre-paid, as

follows:

Joshua Smeltzer
U.S. Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201

_____
John Parks Trowbridge, Jr.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | CIVIL NO. 6:14-cv-595 |
| JOHN PARKS TROWBRIDGE, JR., | § | |
| BRIGHT FUTURE INVESTMENTS, INC., | § | |
| IDEAL ABILITIES, and | § | |
| TYLER COUNTY TAX OFFICE, | § | |
| | § | |
| Defendants. | § | |

## ORDER

The court, having considered Plaintiff's Complaint and John Parks Trowbridge, Jr.'s Answer thereto, hereby ORDERS that:

1. The Complaint of the Plaintiff is dismissed, with prejudice, for clear absence of all jurisdiction.

2. The Plaintiff shall terminate any and all assessments made and liens filed against Trowbridge in respect of the subject matter of the Complaint.

3. The Plaintiff shall terminate any and all assessments made and liens filed against the property of Trowbridge in respect of the subject matter of the Complaint.

4. The Plaintiff shall pay Trowbridge restitution in full for all sums paid by Trowbridge and all sums levied or seized from Trowbridge by Plaintiff's agents over Trowbridge's lifetime in respect of income tax.

IT IS SO ORDERED.

Date: _____

_____
UNITED STATES DISTRICT JUDGE

YOU ARE MAKING 3 COPIES.

# EXTREMELY URGENT

Please Rush To Addressee

Schedule package pickup right from your
home or office at usps.com/pickup

Print postage online - Go to usps.com

PLEASE PRESS FIRMLY

**EXPRESS MAIL**

UNITED STATES POSTAL SERVICE

## ORIGIN (POSTAL SERVICE USE ONLY)

PO ZIP Code | Day of Delivery | Postage
Date Accepted | | $
Mo. | Day | Year | Scheduled Date of Delivery | Return Receipt Fee
 | | | Month | Day | $
Time Accepted | □ AM □ PM | Scheduled Time of Delivery | COD Fee | Insurance Fee
 | | □ Noon □ 3 PM | $ | $
Flat Rate □ or Weight | | Military | Total Postage & Fees
 | | □ 2nd Day □ 3rd Day | $
lbs. | ozs. | Int'l Alpha Country Code | Acceptance Emp. Initials

FROM: (PLEASE PRINT)     PHONE (    )

## FOR PICKUP OR TRACKING
Visit **WWW.USPS.COM**
Call 1-800-222-1811

Flat Rate
Mailing Envelope
**For Domestic and International Use**
Visit us at usps.com

## DELIVERY (POSTAL USE ONLY)

Delivery Attempt | Time | Employee Signature
Mo. | Day | | □ AM □ PM |
Delivery Date | Time | Employee Signature
Mo. | Day | | □ AM □ PM |

☐ NO DELIVERY
☐ Weekend ☐ Holiday
Mailer Signature

### CUSTOMER USE ONLY

☐ **WAIVER OF SIGNATURE** (Domestic Mail Only)
Additional merchandise insurance is void if
customer requests waiver of signature.
I wish delivery to be made without obtaining signature
of addressee or addressee's agent (if delivery employee
judges that article can be left in secure location) and I
authorize that delivery employee's signature constitutes
valid proof of delivery.

TO: (PLEASE PRINT)     PHONE (    )

ZIP + 4 (U.S. ADDRESSES ONLY, DO NOT USE FOR FOREIGN POSTAL CODES.)

7 5 7 0 2 +

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

**EXPRESS MAIL**
Post Office To Addressee

Addressee Copy
Label 11-B, March 2004



PM Express
ComBasPrice

When used internationally
affix customs declarations
(PS Form 2976, or 2976A).

USPS packaging products have been
awarded Cradle to Cradle Certification℠
for their ecologically-intelligent design.
For more information go to
mbdc.com/usps

Cradle to Cradle Certified℠ is a certification mark of MBDC.

Please recycle.


